RAFAEL M. GONZALEZ, JR.
ACTING UNITED STATES ATTORNEY
MICHAEL W. MITCHELL, TEXAS STATE BAR NO. 24037126
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
6450 N. MINERAL DRIVE SUITE 210
COEUR D'ALENE, ID 83815
TELEPHONE: (208) 667-6568
FACSIMILE:  (208) 667-0814

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ADAM ARROW WEINBERGER,<br><br>Defendant. | Case No. 3:18-CR-00026-BLW<br><br>**UNITED STATES' OBJECTION TO DEFENDANT'S MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c) (COMPASSIONATE RELEASE)** |

The United States of America, by and through Rafael M. Gonzalez, Jr., Acting United States Attorney, and the undersigned Assistant United States Attorneys for the District of Idaho, pursuant to 18 U.S.C. § 3582(c)(1)(A), object to the Defendant's Motion to Reduce Sentence. (ECF Nos. 35, 36.)   Defendant seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). This motion should be denied because the Defendant has not demonstrated extraordinary and compelling reasons for release - having declined vaccination against COVID-19.  Moreover, the Defendant remains a danger to the community and the 18 U.S.C. § 3553(a) considerations weight against his release.

## BACKGROUND

**A. Criminal Conduct**

**UNITED STATES' OBJECTION TO MOTION TO REDUCE SENTENCE - 1**

In January 2018, the Defendant was charged by a federal grand jury with possessing with intent to distribute 50 grams of a methamphetamine mixture. (ECF 1.) Five months later, the Defendant entered a guilty plea to the charge. (ECF 17.) A PSR was prepared and finalized following an objection period. The final PSR explained that the Defendant had been trafficking drugs by at least September 2017, and noted that the Defendant had been observed in possession of five-pounds of methamphetamine on one occasion, and one-pound of methamphetamine on another occasion. (ECF 23 p. 4.) The Defendant's vehicle was stopped by investigators in December 2017, and he was found in possession of more than ½ pound of pure or actual methamphetamine, even though this purity was never charged by superseding indictment. *Id.* The PSR also noted that the Defendant had been using methamphetamine since age 21. *Id.* at 14.

On October 24, 2018, this Court sentenced the Defendant to 92 months in prison, to be followed by 8 years supervised release. (ECF 32.) This was a substantial departure from the PSR's guideline calculation - calling for a period of 140-175 months incarceration, and less than the Government's recommendation. (ECF Nos. 23 p. 15, 26 p. 1.)

**B. Request for Compassionate Release and Defendant's Medical Condition**

On October 21, 2020, the Defendant requested compassionate release from the Warden. (ECF 36-5 p. 2.) The Warden denied this request. *Id.* Following this denial, and with less than three years served on his sentence, the Defendant filed his compassionate release motion with this Court citing the dangers of COVID-19. (ECF Nos. 35, 36.) Because this motion was filed more than 30 days after his request to the Warden, the Defendant has satisfied the administrative exhaustion requirement set forth in 18 U.S.C. § 3582(c)(1)(A). *United States v. Harris,* 973 F.3d 170, 171 (3rd Cir. 2020).

The undersigned obtained the Defendant's medical records from BOP, which are filed under seal as Exhibit A. The records reveal that the defendant, who is 60 years old, presents

**UNITED STATES' OBJECTION TO MOTION TO REDUCE SENTENCE - 2**

"chronic kidney disease, stage 3a," hypertension and prediabetes, (Exhibit A pp. 2-4, *et seq*.) The Defendant cites these same conditions in support of his release. (ECF 36-1 p. 23.) Also, the Defendant contracted COVID-19 well over a year ago, in May 2020. (Exhibit A p. 21.) All of these conditions appear well-controlled at this time with medication provided by the institution. The defendant is fully ambulatory and engages in all normal activities of daily living and as of January 2021, reported no lingering COVID-19 symptoms.[1] (Exhibit A p. 105 ("COVID-19 Screening completed, denies symptoms or testing").)

### C. BOP's Response to the COVID-19 Pandemic

As the Court is aware, from the moment the pandemic began, the Bureau of Prisons (BOP) made extensive changes to its operations, based on a plan that was prepared over many years, and refined in early 2020 in consultation with the Centers for Disease Control and the World Health Organization. Those efforts continue today.

BOP's "action plan" is described in detail at www.bop.gov/coronavirus/. As part of that plan, all newly arriving inmates are quarantined and not released into the general population until 14-days have passed and the inmate has tested negative; inmate movement within an institution is restricted in order to promote social distancing; mask wearing by inmates and staff is required; all facility staff are screened for symptoms daily; social visiting has been suspended at nearly all institutions; and access by other outsiders is restricted to only those performing essential services, who are also screened before entry.

In addition, acting under the authority granted in the CARES Act, BOP has transferred many thousands of inmates to home confinement, focusing on nonviolent offenders who have

---

[1] The Defendant's medical records show that in September 2020, he requested antibiotics for a upper respiratory infection that the Defendant attributed to COVID-19. (Exhibit A pp. 114-15.) An x-ray was ordered and the Defendant's lungs were determined to be "clear" and "within normal limits." (Exhibit A p. 116.)

**UNITED STATES' OBJECTION TO MOTION TO REDUCE SENTENCE - 3**

served the majority of their sentences.[2]  This initiative, combined with the reduced number of new arrivals during the pandemic and the ordinary release of prisoners upon completion of their sentences, has led to a dramatic decrease in the total BOP population, which in turn has increased opportunities for social distancing and reduced the strain on BOP resources.  At the beginning of the pandemic, the total BOP population was approximately 170,000.  Today, it is at its lowest population in decades, having decreased by more than 10% since the beginning of the pandemic.  When an outbreak does occur, any infected inmate is immediately quarantined, and all contacts (including entire housing units if warranted) are tested and quarantined as necessary, until all contacts return at least two negative tests in a two-week period.

All of these strenuous efforts have been fruitful.  To be sure, there is no way to stop this virus short of widespread worldwide vaccination, inmates inevitably will be infected, and some may succumb, just as in the population at large.  However, the rate of deaths in federal prisons as a whole has been lower than that in the general U.S. population, a notable achievement given the known risks of viral spread in a congregate prison setting.[3]  Further, the incidents of positive

---

[2] This Court does not have authority to grant a transfer to home confinement, or review BOP's administrative decision regarding that issue.  *See* 18 U.S.C. § 3621(b) (BOP's designation decision is not subject to judicial review); *see also, e.g.*, *United States v. Gray*, 2020 WL 6822949, at *2 (E.D. Pa. Nov. 20, 2020) (Sanchez, C.J.); *United States v. Rodriguez-Collazo*, 2020 WL 2126756, at *2-3 (E.D. Pa. May 4, 2020) (Younge, J.); *United States v. Pettiway*, 2020 WL 3469043, at *2 (E.D. Pa. June 25, 2020) (Bartle, J.); *United States v. Torres*, 2020 WL 3498156, at *5-6 (E.D. Pa. June 29, 2020) (Kearney, J.); *United States v. Cruz*, 2020 WL 1904476, at *4 (M.D. Pa. Apr. 17, 2020); *United States v. Mabe*, 2020 U.S. Dist. LEXIS 66269, at *1 (E.D. Tenn. Apr. 15, 2020) ("the CARES Act places decision making authority solely within the discretion of the Attorney General and the Director of the Bureau of Prisons. . . . This Court therefore does not have power to grant relief under Section 12003 of the CARES Act.").

[3] According to the U.S. Census Bureau, the estimated resident adult population of the United States (age 18 and over) on July 1, 2019, was 255,200,373.  *See* https://www.census.gov/data/tables/time-series/demo/popest/2010s-national-detail.html. As of July 3, 2021, there have been approximately 602,700 adult deaths in the United States from COVID-19.  *See* https://covid.cdc.gov/covid-data-tracker/#datatracker-home (there have been fewer than 300 deaths of persons under age 18, *see*

**UNITED STATES' OBJECTION TO MOTION TO REDUCE SENTENCE - 4**

cases in all BOP institutions have been sharply declining for months, with nearly all institutions currently reporting no cases or case tallies in the single digits.

Specifically, as it relates to the Defendant, BOP's aggressive efforts have extended to FCI Lompoc.  As of July 26, 2021, FCI Lompoc had **no inmates or staff with active COVID-19**:[4]  This has not always been the case.

FCI Lompoc, like many cities and states, suffered a major outbreak in April and May 2020.  The Defendant was among the infected.  (Exhibit A p. 21; ECF 36-5 p. 10.)  This outbreak triggered the Office of Inspector General, Department of Justice, to investigate and make recommendations a year ago, in July 2020.  (ECF 36-3 (OIG report).[5]  By the time the OIG report was issued, in July 2020, the number of active cases at Lompoc had already declined precipitously.  This decline occurred in mid-May 2020, after the institution began "testing all FCI inmates":

---

https://www.cdc.gov/nchs/nvss/vsrr/covid_weekly/index.htm#SexAndAge, and we subtract that sum from the national total).  The estimated number of adult deaths is thus approximately 0.236% of the pre-pandemic adult population. According to BOP, the average population of BOP-managed institutions and community-based facilities in March 2020 was 157,756.  As of July 3, 2021, there have been 240 COVID-related deaths in those facilities, which is 0.152% of the March 2020 average population, that is, approximately 35% below the national rate. In asserting that the BOP experience has been relatively worse than the national experience, defendants have cited studies from much earlier time periods in the pandemic, since which time the national mortality numbers steadily and sadly increased at a more dramatic rate.

[4]     *COVID-19 Coronavirus – Covid-19 Cases,* Federal Bureau of Prisons: https://www.bop.gov/coronavirus/ (last accessed July 27, 2021.)

[5]     The July 2020, OIG report found that 1) Lompoc had a preexisting shortage of medical staff for its inmates, 2) that an insufficient number of correction staff resulted in delayed implementation of COVID-19 measures, 3) that Lompoc's "initial COVID-19 screening process was not fully effective," 4) that staff failed to isolate an inmate with positive symptoms, 5) that Lompoc lacked permanent leadership resulting in a deficient COVID-19 response, 6) that Lompoc employees staff identified the lack of PPE and staff in April 2020, and 7) that Lompoc had failed to utilize home-confinement to handle the spread, releasing only 8 to home confinement.  (ECF 36-3, p. 3 (summarizing findings).)

**UNITED STATES' OBJECTION TO MOTION TO REDUCE SENTENCE - 5**



(ECF 36-3, p. 4.) Lompoc took remedial measures to combat that outbreak, including: 1) the construction of an on-site hospital; 2) the erection of a facility to quarantine inmates; 3) contracting with an independent lab for tests; 4) the transfer of 182 COVID-19 negative inmates from FCI Lompoc (where Defendant is serving his sentence) to USP Lompoc to aid social distancing; and 5) the compassionate release of 552 inmates (25% of the FCC Lompoc's prison population) to home confinement, consistent with OIG's recommendations. (Exhibit C pp. 18-20 and 50-51.) These steps are clearly effective, resulting in the presence of no known COVID-19 cases at the Lompoc FCI facility.

  D. Prison Vaccinations

BOP worked with the CDC and the federal government's COVID-19 Vaccine/Therapeutics Operation (formerly known as Operation Warp Speed) to ensure that BOP received the COVID-19 vaccines as they became available, and then offered the vaccines to all willing staff members and inmates, beginning first with staff members (who present a more likely vector for COVID-19 transmission into an institution), and then offering the vaccines to inmates in order of priority of need in accordance with CDC guidelines. As a court observed, "Since the vaccines became available, the Bureau of Prisons diligently and efficiently administered the doses allocated to it, leading all jurisdictions and Federal entities in its vaccine

**UNITED STATES' OBJECTION TO MOTION TO REDUCE SENTENCE - 6**

utilization rate." *United States v. Roper*, 2021 WL 963583, at *3 (E.D. Pa. Mar. 15, 2021) (Kearney, J.) (footnote omitted).

As of this writing, through an intensive effort over the past months, BOP has offered a vaccine to every inmate in BOP-managed institutions, with the exception of some inmates who were recently admitted at a facility after the administration of vaccines at that facility. BOP has administered a total of 203,580 doses to inmates and staff.[6] Going forward, BOP will continue to offer vaccines to newly arrived inmates, and to those inmates who initially declined a vaccine if they change their minds, as expeditiously as possible as supplies are available.

At Lompoc FCC (a prison complex comprised of FCI Lompoc, and USP Lompoc), where the Defendant is held, BOP has fully vaccinated 232 staff members, and 1266 inmates, which is 70% of the current inmate population.[7] This does not include those inmates who, like the Defendant, have declined vaccination.

E. **Defendant refused COVID-19 vaccination**

Ironically, and despite citing the dangers of COVID-19 – the Defendant refused to accept the Moderna COVID-19 vaccine when BOP offered it to him on April 13, 2021. (Exhibit A p. 97; Exhibit B.) Before the vaccine was administered, BOP gave inmates an answer-sheet explaining that the vaccines are safe based upon the experience of 38 million United States citizens who had taken the vaccine thus far. (Exhibit D.) The document also explained that the

---

[6] *COVID-19 Coronavirus – Covid-19 Vaccine Implementation,* Federal Bureau of Prisons: https://www.bop.gov/coronavirus/ (last accessed July 26, 2021.)

[7] COVID-19 Coronavirus – Covid-19 Vaccine Implementation, Federal Bureau of Prisons: https://www.bop.gov/coronavirus/ (last accessed July 27, 2021.) The 70% percentage reflects the vaccination rate for the whole FCC Lompoc complex because BOP does not break it down further into numbers for FCI Lompoc and USP Lompoc. The total inmate population was obtained using BOP's reported inmate numbers: https://www.bop.gov/mobile/locations/#letter_L (last accessed July 27, 2021).

**UNITED STATES' OBJECTION TO MOTION TO REDUCE SENTENCE - 7**

"vaccine is 95% effective at preventing symptomatic COVID-19." *Id.* Of course this is common information during this pandemic.

## LAW

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act on December 21, 2018, provides in pertinent part:

> (c) Modification of an Imposed Term of Imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

In general, the Defendant has the burden to show that extraordinary and compelling circumstances for compassionate release. *See, e.g.*, *United States v. Neal*, 2020 WL 5993290, at *4 (E.D. Pa. Oct. 9, 2020) (Gallagher, J.); *United States v. Adeyemi*, 2020 WL 3642478, at *16 (E.D. Pa. July 6, 2020) (Kearney, J.). The fact of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not alone provide a basis for a sentence reduction. The Third Circuit therefore held: "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d

**UNITED STATES' OBJECTION TO MOTION TO REDUCE SENTENCE - 8**

Cir. 2020); *see United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020) (per curiam) (not precedential) ("[T]he existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit."); *see also United States v. Hegyi*, 2020 WL 7090710, at *2 (N.D. Ind. Dec. 4, 2020) (Van Bokkelen, J.) ("the presence of COVID-19 in a prison, even in large numbers, does not justify compassionate release on its own.").

## ARGUMENT

**A. The Defendant has not presented extraordinary and compelling reasons for release because he refuses COVID-19 vaccination.**

Here, the Defendant presents two risk factors that have been found to make it more likely that the Defendant will get severely ill from COVID-19 - chronic kidney disease and hypertension.[8] However, he fails to prove an "extraordinary and compelling reason" because he declined COVID-19 vaccination on April 13, 2021. (Exhibit A p. 97; Exhibit B.) His motion for compassionate release should be denied for this reason. He cannot, on the one hand, cite expert advice about who is most at risk of serious illness, then ignore the advice of these same experts to get vaccinated.

During this pandemic the Government has acknowledged that an unvaccinated inmate who presents a medical risk factor identified by the CDC as increasing the risk of an adverse outcome from COVID-19, and who is not expected to recover from that condition, presents an extraordinary and compelling circumstance under that provision. That circumstance now does not exist in this case. The defendant has been offered a vaccine approved by the FDA for

---

[8] People with Certain Medical Conditions, Centers for Disease Control and Prevention, May 13, 2021, at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed July 27, 2021). Prediabetes is not on the list but diagnosed diabetes is. *Id.*

**UNITED STATES' OBJECTION TO MOTION TO REDUCE SENTENCE - 9**

emergency use based on its conclusion that, in extensive testing, the vaccine was approximately 95% effective in preventing COVID-19 infection, including in participants with medical comorbidities associated with high risk of severe COVID-19.[9] Studies continue to confirm the efficacy of the vaccines. For instance, on April 1, 2021, Pfizer reported its follow-up study on the 44,000 participants in its Phase 3 trial. It found that the vaccine, based on mRNA technology (like the Moderna vaccine), was 91.3% effective against COVID-19, measured seven days through up to six months after the second dose, across age, gender, race, and ethnicity demographics, across participants with a variety of underlying conditions, and during a period through March 13, 2021, when variants were circulating. Pfizer further found that the vaccine was 100% effective against severe disease as defined by the CDC and 95.3% effective against severe disease as defined by the FDA.[10]

The CDC likewise recently reported the effectiveness of the Pfizer and Moderna vaccines in preventing infection during the same period and concluded that its extensive data "reinforce CDC's recommendation of full 2-dose immunization with mRNA vaccines. COVID-19 vaccination is recommended for all eligible persons . . . ."[11]

A study issued on April 28 and reported by the CDC found that the efficacy rate of the Pfizer and Moderna vaccines was the same (approximately 94%) in the population over the age of 65 as in the population of adults as a whole, showing the effectiveness of the vaccines even in

---

[9]  *See* FDA Decision Memorandum, Moderna - Dec. 18, 2020, https://www.fda.gov/media/144673/download (last accessed July 27, 2021.)

[10]  *See* Pfizer and BioNTech Confirm High Efficacy, April 1, 2021, at https://www.businesswire.com/news/home/20210401005365/en/ (last accessed July 27, 2021).

[11]  Interim Estimates of Vaccine Effectiveness," Centers for Disease Control and Prevention, March 29, 2021, at https://www.cdc.gov/mmwr/volumes/70/wr/mm7013e3.htm (last accessed July 27, 2021).

**UNITED STATES' OBJECTION TO MOTION TO REDUCE SENTENCE - 10**

a group that is particularly vulnerable to severe outcomes.[12] Even more significantly, thus far, the vaccines are proving remarkably effective not just in limiting infection, but in fulfilling their most important purpose: limiting severe disease and death. The CDC tracks "breakthrough" infections after full vaccination.[13] It states that as of July 19, 2021, over 161 million people had been fully vaccinated with one of the three approved vaccines, and among those people the CDC recorded only 5,914 hospitalizations, and 1,141 deaths (292 of which were asymptomatic or not related to COVID). That means that the risk of death in this group after full vaccination, with a symptomatic case of COVID-19, was about 1 in 234,000, a chance far below the ordinary health risks commonly faced by inmates and all others.

Thus, the Defendant, notwithstanding the risk factors he presents, does not present any extraordinary and compelling reason allowing compassionate release. He has elected to decline the vaccine, forgoing the opportunity for "self-care" that BOP made available. For this reason, the motion should be denied. In short, "[n]ow that COVID-19 vaccinations are being administered throughout the Bureau of Prisons, compassionate release motions generally lack merit." *United States v. Reed*, 2021 WL 2681498, at *4 (E.D. Pa. June 30, 2021) (Schmehl, J.). "Courts now widely recognize that a refusal to take preventative measures to protect oneself from COVID-19 undermines any assertion that the risk of viral infection constitutes an extraordinary and compelling reason justifying release." *United States v. Downer*, 2021 WL 2401236, at *2 (D. Md. June 11, 2021) (Gallagher, J.).

---

[12]    Effectiveness of Pfizer [] and Moderna Vaccines Against COVID-19, Centers for Disease Control and Prevention, April 28, 2021, at https://www.cdc.gov/mmwr/volumes/70/wr/mm7018e1.htm?s_cid=mm7018e1_w (last accessed July 27, 2021).

[13]    COVID-19 Vaccine Breakthrough Case Investigation and Reporting, Centers for Disease Control and Prevention, at https://www.cdc.gov/vaccines/covid-19/health-departments/breakthrough-cases.html (last accessed July 27, 2021).

**UNITED STATES' OBJECTION TO MOTION TO REDUCE SENTENCE - 11**

"The glaring consensus among district courts is that refusal of a COVID-19 vaccine subverts a defendant's compassionate release motion." *United States v. Sawyers*, 2021 WL 2581412, at *4 (C.D. Cal. June 22, 2021) (Lew, J.). *See, e.g.*, *United States v. Baeza-Vargas*, 2021 WL 1250349, at *2-3 (D. Ariz. Apr. 5, 2021) (Teilborg, J.) ("Judges of this Court, as well as others around the country, have ruled with consistency that an inmate's denial of a COVID-19 vaccination weighs against a finding of extraordinary and compelling circumstances.") (citing more than a dozen cases); *United States v. Greenlaw*, 2021 WL 1277958, at *7 (D. Me. Apr. 6, 2021) (Woodcock, J.) (the court reviews CDC guidance and numerous other decisions and concludes, "The risk-benefit analysis in favor of inoculation is so overwhelming that the Court holds Mr. Greenlaw's refusal to be vaccinated against his motion for compassionate release."); *United States v. Ortiz*, 2021 WL 1422816, at *3 & *5 n.6 (E.D. Pa. Apr. 15, 2021) (Leeson, J.) (relief is denied because the defendant recovered from COVID-19, likely affording a measure of immunity, and he declined the vaccine; the court agrees with recent decisions that the defendant's "refusal to be vaccinated in the absence of a legitimate medical justification is fatal to his motion for compassionate release," adding, "common sense dictates that finding otherwise would risk creating perverse incentives. Overlooking a medically at-risk petitioner's refusal of an available vaccine and granting him compassionate release would likely incentivize other medically at-risk prisoners to decline an offer of a vaccine, putting themselves and others at risk."); *United States v. Swindler*, 2021 WL 2374231, at *3 (D.S.C. June 10, 2021) (Coggins, J.) ("Although the Court respects both Mr. Swindler's concerns about side effects and his right to refuse vaccination, it cannot ignore the inconsistency of petitioning for compassionate release based on the risk of contracting COVID-19 while simultaneously refusing a highly effective medical intervention to reduce that risk. In short, Mr. Swindler may not manufacture his own 'extraordinary and compelling' circumstances."); *United States v. Strother*, 2021 WL 2188136,

**UNITED STATES' OBJECTION TO MOTION TO REDUCE SENTENCE - 12**

at *8 (E.D. Tex. May 27, 2021) (inmate who declined Johnson & Johnson vaccine "cannot be heard to complain about the dangers of COVID-19 in prison and then fail to take the available measures to mitigate the risk, such as being vaccinated.").

For example, in *United States v. Jackson*, 2021 WL 1145903 (E.D. Pa. Mar. 25, 2021), the court denied relief even though the defendant was 58 years old and suffered from, among other conditions, obesity (BMI of 31.2), type II diabetes, hypothyroidism, hypertension, asthma, and high cholesterol, explaining:

> However, Jackson was offered the Moderna COVID-19 vaccine on January 6, 2021, and elected not to be vaccinated. Thus it seems that Jackson has voluntarily declined to "provide self-care" and mitigate her risk of a severe COVID-19 infection. The FDA approved the Moderna vaccine for use after extensive testing, concluding that it is 95% effective in preventing infection and virtually entirely effective in preventing severe disease, including in participants with medical comorbidities associated with high risk of severe COVID-19. *See* Food and Drug Administration, Emergency Use Authorization, https://www.fda.gov/media/144673/download (Dec. 18, 2020). There is no apparent medical reason that Jackson should not receive the vaccine. It was offered to her by FCI Danbury's medical staff. As her medical records note, she merely "refused." Where Jackson bears the burden of demonstrating her entitlement to relief, the Court finds that her unexplained refusal to accept a COVID-19 vaccination when offered negates her otherwise compelling medical reasons for release.

*Id.* at *2. Another judge wrote:

> Defendant cannot establish that his conditions are exceptional and demand immediate release when he intentionally prevents the BOP from mitigating dangers to his health and safety. 18 U.S.C. § 3582(c)(1)(A). A prisoner cannot on the one hand point to the risk of severe illness, while on the other hand refuse to participate in basic precautionary measures such as vaccination. Allowing federal prisoners to qualify for compassionate release by declining to receive a COVID-19 vaccine, without justification, would discourage prisoners from becoming vaccinated. The court is exceedingly hesitant to provide prisoners an incentive to increase their risk of contracting COVID-19 and developing severe symptoms. Such a result would be profoundly counter-productive and would militate against the ameliorative purposes of compassionate release. Denial of Defendant's request for release is warranted on this basis alone.

**UNITED STATES' OBJECTION TO MOTION TO REDUCE SENTENCE - 13**

*United States v. Austin*, 2021 WL 1137987, *2 (E.D. Mich. Mar. 25, 2021).[14]

Defendants have tried to contest this consensus, pointing out that the vaccines may not be 100% effective, that they were not tested in a congregate setting, that they may not be effective for all individuals, that variants may emerge that bypass the vaccines, and that the vaccines may cause side effects. These courts and others have almost uniformly rejected these arguments. One explained:

---

[14]    Nearly all courts agree with these views. *See also, e.g.*, *United States v. Jackson*, 2021 WL 806366, at *1-2 (D. Minn. Mar. 3, 2021) (Magnuson, J.) ("Jackson's decision to refuse the vaccine flies in the face of any medical recommendation regarding the vaccines. While he is within his rights to refuse any treatment he wishes to forego, he cannot simultaneously claim that he must be released because of the risk of complications while refusing a vaccine that could virtually eliminate that risk."); *United States v. Williams*, 2021 WL 321904 (D. Ariz. Feb. 1, 2021) (Rayes, J.) (defendant's explanation for refusal was "incredible in light of his claim that his risk of a serious illness from the COVID-19 virus is an extraordinary and compelling reason for his immediate release"); *United States v. Garcia*, 2021 WL 1499312, at *3 (C.D. Ill. Apr. 16, 2021) (Mihm, J.) ("Courts across the country appear to have consistently ruled that an inmate's refusal of a COVID-19 vaccine weighs against a finding of extraordinary and compelling circumstance to justify relief. . . . Indeed, while Defendant is not obligated to take the vaccine, it is inconsistent for him to both claim fear of risk of contracting the virus while refusing medical treatment that would drastically reduce his risk."); *United States v. Lohmeier*, 2021 WL 365773, at *2 (N.D. Ill. Feb. 3, 2021) (Tharp, J.) ("In declining vaccination (twice), Mr. Lohmeier declined the opportunity to reduce his risk exposure to COVID-19 dramatically; he cannot reasonably expect that prolonging his risk by declining vaccination will be rewarded with a sentence reduction."); *United States v. Gonzalez Zambrano*, 2021 WL 248592 (N.D. Iowa Jan. 25, 2021) (Williams, J.) (denied based on 3553(a) factors, but states: "It would be paradoxical to endorse a system whereby a defendant could [proffer] extraordinary and compelling circumstances for compassionate release" by refusing "health care [offered] to them"); *United States v. Baptiste-Harris*, 2021 WL 1583081, at *2 (D. Me. Apr. 22, 2021) (Torreson, J.) ("The Defendant offers no support for the idea that he can argue that he is in harm's way, reject measures to mitigate the harm, and then use the continued risk of harm as a justification for release. . . . He cannot, on the one hand, listen to the Centers for Disease Control's advice about who is most at risk of serious illness, but then ignore the same agency's advice to get a vaccine."); *United States v. Gianelli*, 2021 WL 1340970 (D. Mass. Apr. 9, 2021) (Gorton, J.) ("Although defendant has the right to refuse medical treatment, this Court will not reward such refusal to protect himself with a get-out-of-jail card."); *United States v. Redman*, 2021 WL 1737485, at *1 (W.D. Pa. May 3, 2021) (Ambrose, J.) ("His unexplained refusal to accept a COVID-19 vaccination when offered negates any otherwise compelling medical reason for release.") (citing numerous cases).

**UNITED STATES' OBJECTION TO MOTION TO REDUCE SENTENCE - 14**

> Given that Rodriguez is or will soon be fully vaccinated against COVID-19, the Court concludes that Rodriguez's obesity and hypertension are not extraordinary and compelling reasons justifying his release. . . . Rodriguez argues that it is unclear how effective the Pfizer vaccine is, how long its effects will last, and whether it protects against the COVID variants, leaving a risk that he could still become seriously ill. Although all evidence to date is that the Pfizer vaccine is very effective, no one claims that it is 100 percent effective, and thus there remains a small risk that Rodriguez could be infected by COVID-19 and become seriously ill from that infection. But every prisoner runs a small risk of lots of serious medical conditions (including COVID-19). The small risk that Rodriguez may contract COVID-19 and become seriously ill is simply too speculative to justify his release.

*United States v. Rodriguez*, 2021 WL 1187149, at *1-2 (D. Minn. Mar. 30, 2021) (Schlitz, J.). Accordingly, the prevailing view is that "absent some shift in the scientific consensus, vaccination against COVID-19 would preclude the argument that a defendant's susceptibility to the disease is 'extraordinary and compelling' for purposes of § 3582(c)(1)(A)." *United States v. Smith*, 2021 WL 364636, at *2 (E.D. Mich. Feb. 3, 2021) (Ludington, J.); *see also, e.g.*, *United States v. White*, 2021 WL 964050, at *2 (E.D. Mich. Mar. 15, 2021) (Levy, J.) (denied after first dose, and rejects speculation regarding future effectiveness against variants); *United States v. Kariblghossian*, 2021 WL 1200181, at *3 (C.D. Cal. Mar. 29, 2021) (Snyder, J.) ("Nonetheless, at this time, the available scientific evidence suggests that the Pfizer vaccine is highly effective against known variants of the SARS-COV-2 virus that causes COVID-19) (citing CDC studies and Yang Liu, et. al., Neutralizing Activity of BNT162b2-Elicited Serum, The New England Journal of Medicine (March 8, 2021); *United States v. Goston*, 2021 WL 872215, at *3 (E.D. Mich. Mar. 9, 2021) (Levy, J.) (finding the potential that the Pfizer vaccine does not protect against variants inadequate to justify release); *United States v. Brown*, 2021 WL 1154207, at *3 (S.D.N.Y. Mar. 26, 2021) (Wood, J.) (speculation about variants is insufficient). Meanwhile, studies continue to come-in, showing that "Moderna's COVID-19 vaccine is effective against

**UNITED STATES' OBJECTION TO MOTION TO REDUCE SENTENCE - 15**

several variants of concern, including the delta variant. . ."[15] This validates the CDC's advice that individuals, and especially those who have medical conditions that place them at elevated risk for COVID-19, take the Moderna vaccine, a recommendation the defendant rejects while accepting the CDC's warnings about the risks of the virus. The Defendant should not be permitted to accept and cite experts who warn about the danger from the virus, then reject their advice to be vaccinated – a basic step that to a statistical certainty will protect him from the virus.

> **B. The sentence originally imposed remains the minimum necessary to satisfy the § 3553(a) factors.**

But even if this Court held that the Defendant has demonstrated extraordinary and compelling reasons for release - and he has not - the Defendant should not be released because of the 18 U.S.C. § 3553(a) factors and the danger posed to the community if released. The Defendant's 92-month sentence remains the minimum necessary to satisfy the factors in 18 U.S.C. § 3553(a). (ECF 32, judgment.) The nature and circumstances of his offense are serious and support the sentenced imposed and not less. 18 U.S.C. § 3553(a)(1). The PSR shows that the Defendant was a pound distributor of methamphetamine and that he distributed his drugs regionally. (ECF 23 pp. 3-4.) The Defendant acquired drugs from his Tri-Cities Washington connections, took them back to his Coeur d'Alene residence, then delivered them regionally to buyers in Lewiston and Kamiah. *Id.* The PSR established that the Defendant was observed to possess five-pounds of methamphetamine on one occasion and sold a separate confidential source one-pound of methamphetamine on another occasion. *Id.* at 4. The Defendant was

---

[15] Moderna Says Studies Show Its Vaccine is Effective Against the Delta Variant, National Public Radio, Laurel Wamsley, June 30, 2021, found at: https://www.npr.org/sections/coronavirus-live-updates/2021/06/30/1011684609/moderna-says-studies-show-its-vaccine-is-effective-against-the-delta-variant (last accessed July 27, 2021).

**UNITED STATES' OBJECTION TO MOTION TO REDUCE SENTENCE - 16**

arrested and found to possess more than ½ pound of actual methamphetamine. *Id.* Just punishment for such conduct alone - without consideration of the Defendant's extensive criminal history, supports the sentence imposed. No doubt that these drugs harmed the lives of many people in these small communities, resulting in addiction, illness and associated crime.

The original sentence also reflects the history and characteristics of the defendant and is the minimum necessary to protect the public from his further crimes and provides general and specific deterrents. 18 U.S.C. § 3553(a)(1) and (2). The Defendant's past criminal conduct is extensive and unique in its depth and tendency towards violence. It also shows that past efforts to deter him, have been ineffective.

The Defendant's criminal record spans four decades. (ECF 23 pp. 6-10.) At age 19, the Defendant was convicted for false imprisonment. (ECF 23 p. 6.) At age 25, he was sentenced to 5 years prison, with 4 years suspended, for possession and delivery of amphetamines. *Id.* Three years later, he fled the scene of an accident, and the incident must have been serious because the Defendant was sentenced to 15 years prison, with 5 years suspended. *Id.* In the 1990's the Defendant was convicted for harassment, delivery of marijuana, first degree theft, and robbery. *Id.* at 7. In the 2000's, his criminal conduct remained unabated, with convictions for manufacture/delivery of a controlled substance and telephone harassment. *Id.* at 8. In 2011, the Defendant was convicted for possession of a controlled substance and he was incarcerated further after violating his parole. *Id.* at 9. He violated parole by committing new crimes while under supervision: assault, domestic violence, and possession of methamphetamine. *Id.* at 9-10. There is no reason to believe that the Defendant's demonstrated willingness to break the law will change now. This demonstrated resistance to rehabilitation efforts is particularly dangerous for this Defendant, convicted of numerous felonies and violent crimes including domestic violence and robbery.

**UNITED STATES' OBJECTION TO MOTION TO REDUCE SENTENCE - 17**

In his petition, the Defendant attempts to recast his drug trafficking as isolated and argues that others around him "failed" when he sustained a hand injury that caused his drug trafficking. (ECF 36-1 pp. 4-6.) Although he includes himself in the list of the culpable, he argues that his doctor, his insurance company, the Idaho Department of Corrections, and his tribe, are also responsible. *Id.* But this excuse - that his hand injury led to his drug trafficking - was not made in any of the pleadings in his federal criminal case. His attorney did not argue this in his sentencing memorandum. (ECF 29.) It was not a physical condition described in the PSR and was not, to the best of this attorney's recollection, offered as an explanation. (ECF 23 p 13.) Regardless, it is an insufficient excuse for significant drug trafficking. It would also gain more traction if the Defendant did not have such an extensive criminal record and a proven history of crimes, including drug crimes and drug trafficking. (ECF 23 pp. 6-10.) The Defendant's 2018 conviction was a continuation of his expansive criminal record – a criminal record that will hopefully end after he completes his full sentence.

## CONCLUSION

A consideration of the above shows that release at this point is inappropriate based on the offense of conviction, the defendant's managed medical condition, the risk to the community, the 18 U.S.C. § 3553(a) factors, and the amount of time remaining on the defendant's sentence. Respectfully, we urge this Court to deny this motion for compassionate release.

Respectfully submitted this 27th day of July, 2021.

                                             RAFAEL M. GONZALEZ, JR.
                                             ACTING UNITED STATES ATTORNEY
                                             By:

                                             */s/ Michael W. Mitchell*
                                             MICHAEL W. MITCHELL
                                             Assistant United States Attorney

**UNITED STATES' OBJECTION TO MOTION TO REDUCE SENTENCE - 18**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 27, 2021, the foregoing **UNITED STATES' OBJECTION TO DEFENDANT'S MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c) (COMPASSIONATE RELEASE)** was electronically filed with the Clerk of the Court using the CM/ECF system, and that a copy was served on the following parties or counsel by:

| | |
|---|---|
| Adam Arrow Weinberger<br>Register Number: 19373-023<br>FCI Lompoc<br>3600 Guard Road<br>Lompoc, California<br>93436 | United States Mail, postage prepaid<br>Labeled "Special Mail – Legal Mail – Open only in the presence of the inmate." |

**UNITED STATES' OBJECTION TO MOTION TO REDUCE SENTENCE - 19**